UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JASON R. CRAIG,<br><br>Plaintiff,<br><br>v.<br><br>COMMANDER, et al.,<br><br>Defendants. | CAUSE NO. 2:23-CV-438-HAB-JEM |

OPINION AND ORDER

Jason R. Craig, a prisoner without a lawyer, moves for a preliminary injunction requiring that he be provided with medication for mental health issues and sciatica pain. (ECF 2.) The court ordered a response to the motion by the Commander of the Porter County Jail, which has now been filed. (ECF 25.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally

includes a demonstration of how the applicant proposes to prove the key elements of [his] case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

As outlined in the screening order, Mr. Craig claims that he is not receiving proper medical care at the jail for mental health issues and sciatica pain. He claims that

2

when he arrived at the jail in early November 2023, medical staff discontinued all of his medications and failed to provide him with medication to address his needs. He is proceeding on a claim for damages against Dr. Eric Tchaptchet,[1] who made the treatment decisions at issue, and against the Commander in his official capacity for prospective injunctive relief. (ECF 4.)

Because Mr. Craig is a pretrial detainee, his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). Nevertheless, they are entitled to adequate medical care. *Miranda*, 900 F.3d at 353-54. To establish a Fourteenth Amendment violation, a detainee must prove: "(1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's]s medical need; and (4) the defendant act[ed] purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm." *Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (citation and internal quotation marks omitted). In determining whether a challenged action is objectively unreasonable, the court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). It is not enough for the plaintiff to show "negligence or gross negligence." *Miranda*, 900 F.3d at 353-54.

---

[1] Mr. Craig identified this individual in the complaint as "Dr. Doe." (*See* ECF 4.) He has since been identified as Dr. Tchaptchet. (ECF 27.)

3

The Commander argues that preliminary injunctive relief is not warranted and has submitted Mr. Craig's medical records and other documentation in support. (ECF 25; ECF 25-1.) Those records reflect that Mr. Craig arrived at the jail on November 8, 2023. He was released on December 12, 2023, but was then reincarcerated on December 28, 2023, and remains at the jail at present.[2] (ECF 25-1 ¶ 3; ECF 19.)

Upon his initial arrival on November 8, 2023, a medical screening was completed. Mr. Craig reported that he had Hand, Foot, and Mouth Disease ("HFMD")[3] and "sciatica." He listed his current medications as Wellbutrin, Seroquel, Lyrica, and Methadone. He also reported having "shoulder issues," dental decay, and pain. It was documented that he last used methamphetamine two weeks earlier and had withdrawn from alcohol and heroin approximately two years earlier. Because of his report of HFMD, he was placed in medical isolation. (ECF 25-1 ¶ 5; ECF 25-2 ¶¶ 3-4.)

On November 10, 2023, Mr. Craig met with a nurse, who asked for additional details about his medications and health issues. He told her that he was taking Wellbutrin, Seroquel, Lyrica, and Methadone and was currently receiving medical care for HFMD and sciatica. The nurse contacted the pharmacy where he said he had his prescriptions filled and was able to verify a prescription for Lyrica and Wellbutrin. On

---

[2] After Mr. Craig was released from custody, the court ordered him to show cause why his claim for injunctive relief should not be dismissed as moot. (ECF 16.) He did not respond to this order, but it is evident from his other filings, and those of the Commander, that he is again in custody at the jail. (ECF 24, 25, 26.) The court is satisfied that subject matter jurisdiction exists with respect to his claim for injunctive relief.

[3] HFMD is a highly contagious disease involving fever, rash, and mouth sores. *See* https://www.cdc.gov/hand-foot-mouth/about/signs-symptoms.html (last visited Feb. 29, 2024).

4

that same date, Dr. Tchaptchet ordered Effexor to substitute for Wellbutrin and Ibuprofen to substitute for Lyrica. (ECF 25-1 ¶7.)

On November 12, 2023, a nurse saw Mr. Craig after he reported chest pain. His vital signs were taken, and it was noted that he had been fine a few hours earlier when nurses were passing out medication. She suspected that he might be having indigestion after eating lunch and noted that she would monitor him. (*Id.* ¶ 8.) Later that day, Mr. Craig again complained about chest pain after eating dinner. His vital signs were taken and logged. The nurse conveyed this information to a nurse practitioner, who prescribed a medication for indigestion. (*Id.* ¶ 9.)

On November 14, 2023, medical staff was called to assist when Mr. Craig was in a padded cell standing on top of the toilet and attempting to dive off of it. He fell to the floor and reported that he was unable to move due to back pain. He was moved by jail staff and subsequently placed in a restraint chair. (*Id.* ¶ 10.) Later that day he was seen by a mental health provider. She determined that he should be placed on suicide watch and instructed that he remain in the padded cell for further observation. (*Id.* ¶ 11.) The following day, a nurse consulted with Dr. Tchaptchet after noting that Mr. Craig's hands and feet were peeling, and the doctor prescribed an ointment to address this issue. (*Id.* ¶ 12.)

Also on November 15, 2023, a mental health provider determined that Mr. Craig could be released from the padded cell and stepped down to level two "watch status." (*Id.* ¶ 13.) The following day, the provider noted that Mr. Craig was out of the padded cell and currently in medical isolation and would remain on watch status. (*Id.* ¶ 14.)

5

Two days later, she determined that he could be released from watch status and returned to general population. (*Id.* ¶ 15.)

On November 21, 2023, another assessment of Mr. Craig's health was completed. A nurse noted that he had swelling to an upper back tooth. Dr. Tchaptchet was consulted and he prescribed an antibiotic for seven days. (*Id.* ¶ 17.) The following day, a member of the medical staff attempted to get Mr. Craig's records from an outside hospital to confirm his diagnosis of HFMD. The records were received, but there was no mention of this disease. Instead, the records reflect that he was seen in the emergency room earlier in November for cellulitis of the left hand and given a course of antibiotics. (*Id.* ¶ 18.) Dr. Tchaptchet was consulted and ordered an antibiotic and Ibuprofen for pain. During sick call that evening, Mr. Craig told a nurse that two of his fingernails had fallen off and that others were loose. This information was sent to one of the jail doctors. (*Id.* ¶ 19.)

On November 29, 2023, Mr. Craig had a visit with a mental health provider. She determined that a follow-up should be scheduled in two weeks. (*Id.* ¶ 20.) The following day, the provider noted that she had obtained records from an outside facility regarding mental health treatment Mr. Craig had received there in August 2020. Those records were made part of his file. (*Id.* ¶ 21.)

On December 4, 2023, Mr. Craig had a dental visit and four teeth were pulled. A new order was issued for Ibuprofen for five days. (*Id.* ¶ 22.) The following day, he reported to a nurse that he had mouth pain, and he was given Tylenol in addition to the

6

Ibuprofen. He was told to put in request to be seen if these medications were not helping and he wanted something different to take. (*Id.* ¶ 23.)

On December 6, 2023, a nurse spoke with Mr. Craig about his recent doctor visit and an order for Wellbutrin. He reported that he had the medication at home and was able to have his family bring it in. Dr. Tchaptchet approved the use of this medication and indicated that the Effexor should be discontinued once his family brought in the Wellbutrin. (*Id.* ¶ 24.) That same day, Mr. Craig had a follow-up visit with a mental health provider. (*Id.* ¶ 25.) On December 7, a nurse noted that Mr. Craig's family had delivered his Wellbutrin and that, per Dr. Tchaptchet, he would be given this medication and the Effexor would be discontinued. (*Id.* ¶ 26.)

On December 12, 2023, Mr. Craig was released from the jail. A little over two weeks later, on December 28, 2023, he was reincarcerated. On his intake form he indicated that he was taking a number of prescription medications, including Wellbutrin and Artane, and that he had used methamphetamine within the last week. (ECF 25-2 at 11.) On December 30, 2023, a nurse noted that he had recently been at the jail and was taking several medications, including Wellbutrin, Risperidal,[4] and Ibuprofen. She reviewed the list of medications with a doctor (a non-party) over the phone, and the doctor discontinued the Ibuprofen because it was available at the jail

---

[4] Risperidal is used to treat schizophrenia and other psychiatric illnesses. PHYSICIAN'S DESK REFERENCE, Risperidal. Avail. at https://www.pdr.net/drug-summary/?drugLabelId=3120 (last visited Feb. 29, 2024). Artane (or trihexyphenidyl) is used to treat certain side effects of psychiatric drugs. PHYSICIAN'S DESK REFERENCE, Trihexyphenidyl. Avail. at https://www.pdr.net/browse-by-drug-name?search=trihexyphenidyl (last visited Feb. 29, 2024). Mr. Craig reported to a nurse that he was prescribed Artane by an outside doctor to address facial tics and other symptoms. (ECF 25-1 at 29.)

commissary, but approved several other medications including the Risperidal. The doctor directed that staff should inquire whether his family could bring in the Artane for him to use at the jail. (*Id.* ¶ 28.)

On January 4, 2024, Dr. Tchaptchet issued an order for Lyrica for chronic pain to substitute for the Ibuprofen. (*Id.* ¶ 30.) A few days later, a nurse noted that Mr. Craig's family had brought in some medications, including a bottle of what purported to be Seroquel, but it was expired and had writing all over the bottle, making it illegible. (ECF 25-1 at 81.) Mr. Craig was not permitted to take this medication, but after reviewing his medications Dr. Tchaptchet issued an order for Cymbalta for pain. (*Id.* at 82.) Mr. Craig is currently taking Wellbutrin, Artane, Ibuprofen, Risperdal, Cymbalta, and other medications and remains under the care of medical staff. (ECF 25-1 ¶ 33; ECF 19.)

Based on the present record, there is no question that Mr. Craig has serious medical needs. However, he has not demonstrated a likelihood of success in proving that jail staff committed a volitional act with respect to his medical care that was objectively unreasonable under the circumstances. *Gonzalez*, 40 F.4th at 828. To the contrary, the care he has received appears more than reasonable. Medical staff—including Dr. Tchaptchet—have been attentive to his medical needs, responded to the myriad of health concerns he has presented during his short time at the jail, and provided him with a number of medications to address these issues. They obtained records from his pharmacy and outside medical facilities to gain a more complete picture of his care needs. Dr. Tchaptchet also approved him to use medications he had been prescribed prior to his incarceration even though these medications would

8

ordinarily be substituted. His care was disrupted by his release and subsequent reincarceration at the jail, which was not within the control of jail medical staff. The record reflects that he is currently on a number of medications, including his preferred medications, and continues to be monitored by medical staff.[5] He has not demonstrated a likelihood of success on the merits, nor has he demonstrated that he will suffer irreparable injury if he is not granted immediate injunctive relief before his claims are resolved.

For these reasons, the plaintiff's motion for a preliminary injunction (ECF 2) is DENIED.

SO ORDERED on March 5, 2024.

s/Holly A. Brady  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT

---

[5] The court notes that he recently filed a "Fact Declaration" confirming that he is taking a number of medications but raising a host of issues not encompassed within his complaint or the screening order. (ECF 19.) The court cannot grant him injunctive relief on issues that fall outside the scope of the claims he is proceeding on. *See Westefer*, 682 F.3d at 681. To the extent he expresses a preference that his medical care be provided exclusively by his outside doctors rather than staff at the jail, the Fourteenth Amendment does not entitle him to such relief. Instead, it entitles him to reasonable care for serious medical needs, which he has received. *See Gonzalez*, 40 F.4th at 828.